UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAUREL McFARLAND, *et al.*,

Plaintiffs,

v.

APP PHARMACEUTICALS, LLC, *et al.*,

Defendants.

Case No. C10-1746RSL

ORDER GRANTING IN PART/DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND

This matter comes before the Court on "Defendant APP Pharmaceuticals, LLC's Motion to Dismiss Plaintiffs' First Amended Complaint" (Dkt. # 154) and "Defendant Becton Dickinson and Company's Motion to Dismiss Plaintiff's First Amended Complaint" (Dkt. # 156). Because numerous other Defendants joined in these motions, and because the same legal issues apply to all the Defendants, the Court will consider the motions as if they had been filed by all Defendants. The Court has jurisdiction under 28 U.S.C. § 1332. Plaintiffs, Laurel McFarland and her husband, both Washington residents, contend that Mrs. McFarland was injured by the drug heparin, which they allege was manufactured, sold and/or supplied by each of the non-Washington resident Defendants.

For the reasons set forth below, the Court GRANTS Defendants' motions to the extent they seek dismissal of Count Four of Plaintiffs' Amended Complaint. The Court DENIES the

ORDER GRANTING IN PART/DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS WITH LEAVE TO AMEND - 1

1 | remainder of Defendants' requests.[1]

# I. Background

On June 16, 2011, the Court granted Defendants' first motions to dismiss, citing three rationales. Order (Dkt. # 142). First, the Court concluded that each of common law causes of action alleged in the original Complaint (Dkt. # 2) had been preempted by the Washington Product Liability Act ("WPLA"), RCW 7.72.010, and that Plaintiffs had not alleged a plausible claim under the WPLA. Order (Dkt. # 142) at 3–4. To wit, Plaintiffs alleged that Mrs. McFarland received heparin injections from nine different product sources, Complaint (Dkt. #2) at ¶ 29, yet alleged that each of 93 Defendants "'manufactured, supplied and/or sold' all of the [heparin] doses [Mrs. McFarland] received, and that all of those administrations caused her injury." Id. at ¶¶ 30–31. This internal inconsistency demonstrated that Plaintiffs' claims were speculative at best. Order (Dkt. # 142) at 4–5.

Second, the Court noted that Plaintiffs had failed even to allege essential elements of their claims for breach of express and implied warranties. Id. at 5. Finally, the Court noted that the WPLA does not permit the recovery of punitive damages. Id. at 7. Accordingly, while the Court granted Plaintiffs leave to amend their complaint to correct the first two deficiencies, it dismissed Plaintiffs' claim for punitive damages with prejudice. Id.

On July 13, 2011, Plaintiffs filed an Amended Complaint (Dkt. # 143). They filed a corrected Amended Complaint (Dkt. # 144) the following day. The general basis for Plaintiffs' suit remained the same. Plaintiffs' allege that "[o]n or around October 24, 2007, Laurel McFarland was admitted to Overlake Hospital Medical Center with a superficial femoral artery and popliteal occlusion." Amended Complaint (Dkt. # 144) at ¶ 16. And, "[a]s part of her treatment at Overlake Hospital Medical Center, Laurel McFarland received several doses of heparin, beginning on or around October 24, 2007 and continuing to October 31, 2007." Id. at

---

[1] Because the matter can be decided based on the parties' memoranda, the complaint, and the balance of the record, defendants' request for oral argument is DENIED.

ORDER GRANTING IN PART/DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS WITH LEAVE TO AMEND - 2

¶ 16. Plaintiffs allege that as a result of these injections Mrs. McFarland developed heparin-induced thrombocytopenia ("HIT") and heparin-induced thrombocytopenia with thrombosis ("HITTS"), which caused her to develop "multiple severe HITTS-related injuries including, but not limited to, graft thrombosis, clotting of the blood, cyanosis of the extremities, necrosis of the extremities, and a below-the-knee amputation of her leg." Id. at ¶¶ 15–16, 66.

Notably, however, Plaintiffs have made some important changes. Primarily, Plaintiffs now allege that only seven named Defendants and two unnamed Defendants acted to cause Plaintiffs injuries.[2] See id. at ¶¶ 3–10, 14, 18–49. In addition, Plaintiffs have bolstered their Amended Complaint with more detailed factual allegations. For instance, Plaintiffs now specifically allege that Mrs. "McFarland was administered doses of heparin including, but not limited to, heparin injection 1,000 u/ml from multiple 10 ml vials," id. at ¶ 18, "on October 24, 2007; October 25, 2007; October 26, 2007; October 27, 2007; October 28, 2007; and October 30, 2007," id. at ¶ 19. Plaintiffs further allege that each of the Defendants other than Cardinal Health "manufactured, supplied, and sold at least one of the 10 ml vials of heparin that were used in the treatment and care of Laurel McFarland, and that caused her injuries as alleged herein."[3] Id. at ¶¶ 21–23, 25–28.

Plaintiffs have also bolstered their allegations regarding the other eight heparin sources. Plaintiffs now particularize their allegation that Mrs. McFarland received "multiple administrations of heparin 20,000 units in a dextrose solution from a 500 ml bag," id. at ¶ 29, to each Defendant, id. at ¶¶ 30–31. Plaintiffs also provide greater detail about the frequency with

---

[2] Subsequent to the filing of the First Amended Complaint and prior to the filing of any of the motions to dismiss, Plaintiffs voluntarily dismissed their claims against Hospira, Inc. (Dkt. # 152). After the motions were filed, the Court ordered the dismissal of Cardinal Health 110, Inc. (Dkt. # 163) and Covidien Inc. (Dkt. # 172) pursuant to stipulation between the parties. Plaintiffs then voluntarily dismissed their claims against Becton Dickinson and Company (Dkt. # 177).

[3] Cardinal Health is alleged to have "distributed, supplied, and sold at least one of the 10 ml vials of heparin that were used in the treatment and care of Laurel McFarland, and that caused her injuries." Amended Complaint (Dkt. # 144) at ¶ 24.

ORDER GRANTING IN PART/DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS WITH LEAVE TO AMEND - 3

which Mrs. McFarland received other heparin doses, alleging she received "5,760 unit of bolus heparin on October 25, 2007; 1,000 unit heparin injection on October 26, 2007 and October 30, 2007; 10,000 unit heparin injection on October 28, 2007; 3,000 unit heparin injection on October 29, 2007; 1,260 unit heparin infusion on October 30, 2007; 1,300 unit heparin infusion on October 30, 2007; and 2,000 unit heparin injection on October 30, 2007," id. at ¶ 40.[4] Furthermore, Plaintiffs now allege that these doses were comprised of heparin obtained from each Defendant. Id. at ¶¶ 42–49.

Plaintiffs seek compensatory damages and punitive damages under the WPLA. Mr. McFarland also brings a consortium claim, seeking compensatory damages and attorney's fees.

## II. Discussion

Defendants ask the Court to dismiss Plaintiffs' claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). They again argue that (1) Plaintiffs have failed to plead a facially plausible claim for relief, (2) Plaintiffs' claims are time-barred, (3) Plaintiffs failed to plead privity and thus failed to adequately plead their implied warranty claim (Count Four), (4) Plaintiffs are not entitled to punitive damages, and (5) because Mrs. McFarland's claims must be dismissed, so must Mr. McFarland's consortium claim.

**A.     Dismissal Standard.**

As the Court explained in its prior Order:

> Defendants have filed a 12(b)(6) motion for failure to state a claim upon which relief can be granted. The complaint should be liberally construed in favor of the plaintiff and its factual allegations taken as true. See, e.g., Oscar v. Univ. Students Co-Operative Ass'n, 965 F.2d 783, 785 (9th Cir. 1992). The Supreme Court has explained that "when allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558 (2007) (internal citation and quotation

---

[4] Plaintiffs again allege that each Defendant other than Cardinal Health "manufactured, supplied, and sold at least one of the" products or units described above and that each caused Mrs. McFarland's injuries. Cardinal Health is alleged to have distributed rather than manufactured the heparin in question.

ORDER GRANTING IN PART/DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS WITH LEAVE TO AMEND - 4

omitted). A complaint must include enough facts to state a claim for relief that is "plausible on its face" and to "raise a right to relief above the speculative level." Id. at 555. The complaint need not include detailed factual allegations, but it must provide more than "a formulaic recitation of the elements of a cause of action." Id. A claim is facially plausible when plaintiff has alleged enough factual content for the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.

Order (Dkt. # 142) at 2–3.

**B.    Analysis.**

**1.    Facial Plausibility.**

As discussed already in some detail, the primary shortcoming of Plaintiffs' original complaint was that it was simply implausible. Plaintiffs alleged the existence of only nine dosage sources of heparin, Complaint (Dkt. #2) at ¶ 29, yet claimed that 93 individual defendants had each "'manufactured, supplied and/or sold' all of the doses [Mrs. McFarland] received," id. at ¶¶ 30–31. Because 93 is far greater than nine, and because Plaintiffs provided no factual allegations alluding to any combination of sources nor plead in the alternative, the Court had no choice but to conclude that Plaintiffs' claims were speculative at best. Order (Dkt. # 142) at 3–5.

Plaintiffs have now cured their plausibility problem. In their Amended Complaint, Plaintiffs provide greater detail concerning the frequency of the heparin dosing. By Defendants' own counts, Plaintiffs now allege at least 24 different dosings. Motion (Dkt. # 154) at 4; Motion (Dkt. # 156) at 6. Moreover, Plaintiffs have pared the number of Defendants down to nine—only eight of which are alleged to be heparin manufacturers—and have specifically alleged that each Defendant manufactured or distributed at least one of the dosings that caused Mrs. McFarland's injury.[5] Quite simply, the numbers now fit. The Amended Complaint is

---

[5] The Court is troubled by the apparent confusion as to the import of Federal Rule of Civil Procedure 11(b)(3). That Rule plainly provides:

ORDER GRANTING IN PART/DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS WITH LEAVE TO AMEND - 5

"plausible on its face." Twombly, 550 U.S. at 570; accord Iqbal, 129 S. Ct. at 1949. Rather than pleading facts that do no more than suggest the mere "possibility that each individual defendant, as opposed to the 92 others, may be responsible for the allegedly defective product," Order (Dkt. # 142) at 3–5, Plaintiffs plead specific "[f]actual allegations" that, if proven true, would be sufficient to establish each Defendant's liability, Twombly, 550 U.S. at 555. Nothing more is required. Id. ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . .").

**2.  Statute of Limitations.**

The Court previously considered and rejected Defendants' assertion that the Court should dismiss Plaintiffs' claim as time-barred. Nothing has changed.

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (emphasis added) (quoting Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006)). Under the WPLA, the applicable statute of limitations period is three years from when the injured individual discovered "the harm and its cause." RCW 7.72.060(3).

---

> By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> * * *
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;
>
> Stated even more plainly, if Plaintiffs are relying on the "will likely have evidentiary support . . ." provision of Rule 11(b)(3), it is incumbent upon them to say so. In the absence of such a statement, the Court assumes that Plaintiffs "have evidentiary support." If Defendants believe that Plaintiffs are operating in derogation of this straightforward and baseline principle, the Court directs them to the procedure set forth by Rule 11(c)(2) for bringing an appropriate motion.

1    Application of this three-year period is complicated, however, by Washington's

2 utilization of the "discovery rule," which tolls the running of the limitations period until the

3 "plaintiff knew or should have known all of the essential elements of the cause of action."

4 White v. Johns-Manville Corp., 103 Wn.2d 344, 348 (1985); see also Orear v. Int'l Paint Co., 59

5 Wn. App. 249, 257 (1990) ("A person injured by a defective product simply cannot be said to

6 have discovered the cause of injury in a legally enforceable sense until he or she discovers *who*

7 manufactured or supplied the product or is otherwise responsible for the injury."). The Court's

8 inquiry is further complicated by the fact that Washington law permits further tolling of the

9 statutory period under circumstances that might be implicated here. Cf. Rivas v. Overlake Hosp.

10 Med. Ctr., 164 Wn.2d 261, 268 (2008) (tolling for disability).

11    These considerations preclude the Court from determining that "the running of the statute

12 is apparent on the face of the complaint." Von Saher, 592 F.3d at 969 (citation omitted).

13 Contrary to Defendants' contentions, the mere fact that heparin manufacturers are listed as a

14 matter of public record does not necessarily negate application of the discovery rule. As

15 Defendants so persuasively argued in their first round of motions, there is a distinct difference

16 between being a heparin manufacturer and being the heparin manufacturer of the specific

17 product that caused Plaintiffs' injuries. See Order (Dkt. # 142) at 3–5. Thus, again, the Court

18 does not find at this preliminary stage of the litigation that Plaintiffs' claims are time barred.

19    **3.    Implied Warranty Claim.**

20    In its prior order, the Court dismissed Plaintiffs' implied warranty claim under the WPLA

21 for failing to allege an essential element of that claim—privity. In their Amended Complaint,

22 Plaintiffs once again fail to allege that privity exists, let alone allege sufficient facts to

23 demonstrate privity. Instead, Plaintiffs cite Baughn v. Honda Motor Co., 107 Wn.2d 127,

24 151–52 (1986), for the proposition that Washington law relaxes the privity requirement to the

25 defendant through advertising or other means." Plaintiffs' Response (Dkt. # 166) at 14.

26    The shortcoming in Plaintiffs argument is clear. Washington law relaxes the privity

requirement "where defendants make express representations." Baughn, 107 Wn.2d at 151–52. And express representations give rise to express warranty claims—not implied warranty claims. Id. That much is clear from Baughn itself, where the court distinguished between the plaintiff's implied warranty claims—for which privity was required—and his express warranty claims—for which it was not. Id. As later explained in Fortune View Condominium Ass'n v. Fortune Star Development Co., "In Baughn v. Honda Motor Co., we held that while contractual privity is required for implied warranty claims, contractual privity is not required for a plaintiff to benefit from express warranties in advertising." 151 Wn.2d 534, 539 n.3 (2004).

Because Plaintiffs fail to allege privity, they do not adequately plead an implied warranty claim. Id. Moreover, even were the Court to construe Plaintiffs' claim as an express warranty claim, it would fare no better. Plaintiffs do not allege a single example of an express representation made by any of the Defendants. Cf. Fisher v. APP Pharm., No. 08-CV-11047, 2011 WL 812277, at *5 (S.D.N.Y. Mar. 1, 2011). Instead, Plaintiffs appear only to regurgitate their earlier-plead failure to warn claim. The Court therefore GRANTS Defendants' motions to the extent they seek dismissal of the Fourth Count of Plaintiffs' Amended Complaint.

That said, the infirmity does appear to be correctable at this point. Accordingly, the Court again GRANTS Plaintiffs' request for leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1130–31 (9th Cir. 2000). Plaintiffs are directed to file a second amended complaint within 30 calendar days of the date of this order. As stated in the Court's previous order, if Plaintiffs wish to bring an implied warranty claim, they need to allege facts demonstrating privity. Order (Dkt. # 142) at 5. If Plaintiffs wish to bring an express warranty claim, they need to plead examples of the express representations that caused their harm. Id. If Plaintiffs fail to adequately plead either of these claims in their next complaint, the Court will assume that Plaintiffs lack sufficient facts to maintain their claim and will deny further requests to amend.

### 4. Punitive Damages.

The Court previously dismissed with prejudice Plaintiffs' claim for punitive damages,

explaining that "the WPLA does not provide for punitive damages." Order (Dkt. # 142) at 7; see, e.g., McKee v. AT&T Corp., 164 Wn.2d 372, 401 (2008) (explaining that punitive damages are not available unless specifically allowed by statute). Nevertheless, Plaintiffs include a demand for punitive damages in Count Four of their Amended Complaint. This demand lacks any legal support and is in violation of the Court's prior order. Plaintiffs are advised, again, not to include it in their future pleadings.

**5. Consortium Claim.**

Defendants argue that Mr. McFarland's claim for loss of consortium must be dismissed because Mrs. McFarland's claims were inadequately plead. As the Court concludes that at least some of Mrs. McFarlands claims are now adequately plead, it finds no basis for dismissing Mr. McFarland's claim.

### III. Conclusion

For all of the foregoing reasons, the Court DENIES IN PART and GRANTS IN PART Defendants' motions to dismiss. Defendants motions are granted only to the extent they seek dismissal of Count Four of Plaintiffs' Amended Complaint. The Court likewise GRANTS Plaintiffs' request for leave to amend their complaint. Plaintiffs may file a second amended complaint within 30 days of the date of this order.[6]

DATED this 8th day of November, 2011.

*MWF S Lasnik*

Robert S. Lasnik
United States District Judge

---

[6] On October 31, 2011, Plaintiffs filed a motion for leave to file a second amended complaint (Dkt. # 184). In light of this order, that motion is now moot. Plaintiffs may file a second amended complaint that addresses the deficiencies identified in this order.

ORDER GRANTING IN PART/DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS WITH LEAVE TO AMEND - 9